**O**

previously **JS-6**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

SA

| | |
|---|---|
| LUKE ADAM & CHANDRA MARIE ADAM, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> INTERNAL REVENUE SERVICE, ) <br> ) <br> Defendant. ) <br>————————————————— ) | Case No. CV 05-00987 ODW (RNBx) <br><br> Order **DISMISSING** Case with Prejudice |

## I.    BACKGROUND

This is a quiet-title action challenging certain tax liens placed by the United States of America, Internal Revenue Service ("IRS") on real property located at 5505 Paseo Joaquin, in Yorba Linda, California ("Property").  The IRS placed liens on the Property because Dino and Trina Adam, who owe the IRS substantial taxes, are allegedly its true owners.  Luke and Chandra Adam (collectively, "Plaintiffs") contend they are the sole owners and Dino and Trina Adam have no interest in the Property.  This is the core dispute in this case.

The following facts are derived from the July 10, 2007 Final Pretrial Conference Order (the "PCO") and the Court's August 6, 2007 Order and Judgment (the "Order").  The Property was purchased by Dino and Trina Adam in 1982, (PCO ¶ 5(a)), and

1

subsequently sold at a foreclosure sale on September 13, 1994 to Great Western Bank. (PCO ¶ 5(e).)   The Property was then transferred to EMC Mortgage Corporation ("EMC").  (PCO ¶ 5(g).)  On January 31, 1996, the Property was purchased from EMC by Ibrahim Matta, a business partner of Jacob Adam, Dino Adam's brother ("Matta Purchase").  (PCO at ¶ 5(h)-(i).)  The Matta Purchase was made with funds provided by Dino Adam. (Order ¶ 1.)

Thereafter, in October 1996 and November 1996, the IRS recorded a Notice of Federal Tax Lien with respect to the income tax liabilities owed by Dino and Trina Adam for the years 1989, 1991, and 1993.  (PCO ¶ 5(k)-(l).)  After these tax liens were recorded, the Property was subject to several transfers, each of which involved relatives of Dino and Trina Adam.  In April 1999, Ibrahim Matta conveyed title to the Property to Joseph Adam, Dino Adam's nephew.  (PCO ¶ 5(m).)  On June 29, 2000, Joseph Adam conveyed the Property to Plaintiff Chandra Adam, Dino and Trina Adam's daughter. (PCO ¶ 5(n).)  On February 6, 2001, Chandra Adam conveyed the property to herself and her brother, Luke Adam.  (PCO ¶ 5(o).)  Each of these transactions was consummated with less than full and adequate consideration, many times with no consideration whatsoever.  (Order ¶¶ 2-4.)  Despite the multiple transfers of legal title, however, Dino and Trina Adam currently reside at the Property, and have continuously done so since 1982. (PCO ¶ 5(c).)  Although Plaintiffs claim to have received rent from Dino and Trina Adam, neither has ever reported any rental income from the Property on their federal income tax returns.  (PCO ¶ 5(q).)

On March 7, 2001, Dino and Trina Adam filed a bankruptcy petition under Chapter 7 of the Bankruptcy Code.  (PCO ¶ 5(p).)  The bankruptcy proceeding resulted in a discharge of personal liability for Dino and Trina Adam with respect to their income tax debts to the IRS for the years 1989, 1991, and 1993.  (*Id.*)  On November 29, 2004, the IRS re-filed its Notice of Federal Tax Lien, previously recorded on November 18, 1996. (PCO ¶ 5(x).)  Subsequently, on January 12, 2005, the IRS recorded two Notices of Federal Tax Lien, one against Plaintiff Luke Adam and one against Plaintiff Chandra

2

Marie Adam.  (PCO ¶ 5(y).)  These two notices identified Plaintiffs as "nominees" of their parents.  (*Id.*)

On October 11, 2005, Plaintiffs filed a Complaint challenging the January 12, 2005 IRS liens recorded against them.  In July 2007, this Court held a three-day trial on the matter, after which it concluded that Plaintiffs held title to the Property as nominees for Dino and Trina Adam.  (Order ¶ 5.)  Consequently, the Court dismissed Plaintiffs' First Amended Complaint and entered judgment in favor of the IRS.  (Order ¶ 6-7.)

On appeal, the Ninth Circuit concluded that this Court erred by not analyzing California law in determining whether Plaintiffs held title to the Property as nominees for Dino and Trina Adam.  (Dkt. No. 56.)  Accordingly, the Ninth Circuit vacated the judgment and remanded the case.  (*Id.*)  On remand, the Ninth Circuit instructed the Court to determine Dino and Trina Adam's rights in the Property, if any, under California law.  (*Id.*)  The Ninth Circuit further instructed the Court that if it determined that Plaintiffs did not have a beneficial interest in the property, it must provide a reasoned determination as to whether Plaintiffs, as holders of bare legal title, have standing to bring a procedural challenge to the tax liens under 28 U.S.C. § 2410.  (*Id.*)  After extensive briefing by the parties, the Court now addresses these issues.

## II.   DISCUSSION

Pursuant to 26 U.S.C. § 6321, "[i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."  This statute "creates no property rights but merely attaches consequences, federally defined, to rights created under state law."  *U.S. v. Craft*, 535 U.S. 274, 278 (2002) (quoting *United States v. Bess*, 357 U.S. 51, 55 (1958); *United States v. National Bank of Commerce*, 472 U.S. 713, 722 (1985)).  Thus, whether Dino and Trina Adam's interest, if any, in the Property constitutes "property and rights to property' for the purposes of the federal tax lien statute . . . is ultimately a question of federal law" that "largely depends upon state law."  *See Craft*, 535 U.S. at 278.

3

1   Accordingly, the Court must engage in two levels of analysis, one applying state
2   law and the other applying federal law.  First, the Court must look to state law to
3   determine what rights, if any, Dino and Trina Adam have in the Property under California
4   law.  If this inquiry is resolved by finding that Dino and Trina Adam have a beneficial
5   interest in the Property and Plaintiffs have no beneficial interest in the Property, the Court
6   then must determine whether Plaintiffs, as holders of bare legal title, have  standing under
7   28 U.S.C. § 2410 to challenge the IRS tax liens.

8   **A.   CALIFORNIA RECOGNIZES A NOMINEE THEORY OF OWNERSHIP**

9   Plaintiffs contend that California courts would adhere to the tenets of trust law
10   under the facts of the instant case, whereas the IRS maintains that California courts would
11   apply a nominee theory of ownership.  The Court finds Plaintiffs' argument unavailing,
12   and agrees with the IRS.

13   Plaintiffs assert that, in accordance with California trust law principles, the Court
14   should find that the ultimate transfer of the Property to Plaintiffs was a gift from parent
15   to child, and that absent contrary intent this "gift" overcomes any resulting trust and
16   transfers both legal and equitable title to Plaintiffs.  Under California law, if "all or part
17   of the purchase price was furnished by one other than the grantee, if it appears in addition
18   that the grantee was a child or other natural object of bounty of the person who made the
19   payment, it will be presumed that a gift was intended." *Gomez v. Cecena*, 15 Cal. 2d.
20   363, 367 (1940); *see also Finnegan v. Hernandez*, 168 P.2d 32, 34 (Cal. 1946) ("Where
21   the relationship between him who pays the consideration for property and him who takes
22   the title thereto is such that the payor is under obligation to make provision for the
23   grantee, the presumption arises of an intention of the payor to discharge his obligation
24   and the purchase is evidence of a gift.").

25   Assuming *arguendo* the Court applied California trust law, in the instant case, a
26   transfer between parent and child never occurred.  Dino and Trina Adam forfeited title
27   to the Property in 1994 through a foreclosure sale.  (PCO at ¶ 5(e).)  Thereafter, the
28   Property was purchased by Ibrahim Matta, who conveyed title to the Property in 1999 to
Joseph Adam, who transferred the Property in 2000 to Plaintiff Chandra Adam, who then

4

conveyed the property to herself and her brother, Luke Adam, in 2001. (PCO at ¶ 5(h)-(i), (m)-(o); Order ¶ 1.)  Admittedly, Dino and Trina Adam originally held title to the Property and Plaintiffs ultimately obtained title to the Property.  Nevertheless, the multiple intervening transfers spanning more than a decade are simply too attenuated to constitute a transfer between parent and child.  Plaintiff fails to cite any case law or otherwise offer any explanation to the contrary. Thus, the Court concludes that there was no transfer between parent and child, and consequently, the presumption of a resulting trust is not overcome.  Indeed, under this theory, by Plaintiffs own admission, Dino and Trina Adam continue to "h[o]ld a beneficial interest in the Property under a resulting trust."  (Dkt. No. 72 at 6.)

Plaintiffs also argue that California does not recognize a nominee theory of ownership.  Because several California courts have identified and discussed a nominee theory of ownership, however, the Court holds that California recognizes such a theory. *See Leeds v. United States*, No. 08cv100 BTM, 2010 WL 3070349, at *4 (S.D. Cal. Aug. 5, 2010) (discussing several California cases that recognize nominee status, including *Lewis v. Hankins*, 214 Cal. App. 3d 195, 201–02 (1989); *Parkmerced Co. v. City & County of San Francisco*, 140 Cal.App.3d 1091, 1095 (1983); *Baldassari v. United States*, 79 Cal.App.3d 267, 272, 144 Cal.Rptr. 741 (1978)).  California courts, however, have not dictated a standard of how to conduct a nominee analysis.  *Cal Fruit Intern. Inc. v. Jeanne Spaich*, No. Civ. 04-2494, 2006 WL 2711664, at *4 (E.D. Cal. Sept. 21, 2006) ("There appear to be no reported California decisions which address the issue of what factors are relevant in determining whether an individual is a nominee of a taxpayer."). As the Ninth Circuit stated in its mandate, "[i]f California law is unclear on the dispositive issue, then it is the task of the district court to do its best to predict how the California Supreme Court would likely resolve it."  (Dkt. No. 56.)  Such a prediction "may be based on 'intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements.'" (Dkt. No. 56.)  Thus, the Court must predict how the Supreme Court of California would employ a nominee analysis.

When there are few or no California decisions on a particular topic, as in the instant

case, California courts often look to decisions of California federal courts.  *See Aug. Entm't, Inc. v. Philadelphia Indem. Ins. Co.*, 146 Cal. App. 4th 565, 577 (Cal. Ct. App. 2007) (with few California decisions relating to D&O policies that court looked to California federal court and out-of-state cases in resolving coverage issues and interpreting policy provisions);  *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 38 (Cal. Ct. App. 2000) (stating that "when there is no California precedent on point, federal precedent should be consulted.").  Indeed, according to the California Supreme Court, "'[w]hile the lower federal courts' decisions do not bind us, we give them 'great weight' when they reflect a consensus."  *Coral Construction, Inc. v. City and County of San Francisco, et al.*, 50 Cal.4th 315, 329-330 (2010).

Thus, in the absence of California authority on the subject, it is reasonable to presume that the California Supreme Court would seek guidance from federal courts and would likely adopt a federal test.  Numerous federal courts throughout the United States apply the following six factors in determining nominee status: (1) whether there was no consideration or inadequate consideration paid by the purported nominee; (2) whether the property was placed in the name of the purported nominee in anticipation of a suit; (3) the close relationship between the transferor and the purported  nominee; (4) whether there was a failure to record a conveyance; (5) the retention of possession by the transferor; and (6) whether the transferor maintained continued enjoyment of the benefits of the transferred property.  *See, e.g.*, *United States v. Beretta*, No. C 07-02930 SI, 2008 WL 4862509, at *7 (N.D. Cal. Nov. 11, 2008); *Leeds LP v. United States*, No. 08CV100, --- F.Supp.2d ----, 2011 WL 3475282, at *16 (S.D. Cal. Aug. 5, 2011);  *United States v. Washington*, No. H-09-3996, 2011 WL 2470731, at *11 (S.D. Tex. June 20, 2011); *United States v. Wolff, et al.*, No. 09-cv-238J, 2010 WL 6238029, at *6 (D. Wyo. May 18, 2010); *United States v. Fields*, No. 3:06CV697 DPJ, 2009 WL 605775, at *5 (S.D. Miss. Mar. 9, 2009); *Sharp Management, LLC v. United States*, No. C07-402JLR, 2007 WL 1367698, at *3 (W.D. Wash. May 8, 2007).  Accordingly, finding that the California Supreme Court would likely implement this test, this Court applies it to the facts of this case.

**B.    THE PARTIES' INTERESTS IN THE PROPERTY UNDER CALIFORNIA LAW**

In applying the six-factor test set forth above, the Court determines that Dino and Trina Adam hold a beneficial interest in the Property, and that Plaintiffs hold only bare legal title.  As to the first factor – whether there was no consideration or inadequate consideration paid by the purported nominee – the Court notes that absolutely no consideration was paid by Plaintiffs for the Property.  (Order ¶¶ 3-4.)  Indeed, with the exception of the Matta Purchase, each transfer was consummated with no consideration whatsoever.  (Order ¶¶ 1-4.)  Because Plaintiffs paid no consideration for the Property, this factor weighs in favor of a finding that Plaintiffs are nominees of Dino and Trina Adam.  *See United States v. Carter*, No. 08cv1633BEN, 2010 WL 2179725, at *2 (S.D. Cal. May 27, 2010).

As to the second factor – whether the property was placed in the name of the purported nominee in anticipation of a suit – the facts indicate it was likely done so.  On January 31, 1996, Ibrahim Matta purchased the Property with funds provided by Dino and Trina Adam.  (PCO ¶ 5(h)-(i); Order ¶ 1.)  On October 18, 1996, the IRS recorded a Notice of Federal Tax Lien in the county recorder's office with respect to the income tax liabilities owed to the IRS by Dino and Trina Adam for the years 1989, 1991, and 1993.  (PCO ¶ 5(k)-(l).)  The temporal proximity between the Matta Purchase and the IRS tax lien indicates that Dino and Trina Adam likely enlisted Ibrahim Matta, an acquaintance and business partner of Dino Adam's brother, to make the purchase so that they might avoid encumbering the Property in connection with the IRS's impending liens.  *See Leeds LP*, 2011 WL 3475282, at *19.  Thus, this factor weighs in favor of a finding that Plaintiffs are nominees of Dino and Trina Adam.

The third factor – the existence of a close relationship between the transferor and the purported nominee – clearly weighs in favor of a finding that Plaintiffs are nominees of Dino and Trina Adam.  Once Dino and Trina Adam relinquished legal title to the Property due to foreclosure, each subsequent transfer occurred between relatives of Dino and Trina Adam or, in the case of the Matta Purchase, with an acquaintance.  (PCO ¶ 5(i), (m)-(o).)  These transfers ultimately resulted in Plaintiffs, the children of Dino and Trina

7

1   Adam, obtaining title to the Property.

2           The fourth factor – whether there was a failure to record a conveyance – weighs

3   in favor of a finding that Plaintiffs are not nominees of their parents.  Each of the transfers

4   – the Matta purchase, the transfer to Jacob Adam, the transfer to Chandra Adam, and the

5   transfer to Chandra and Luke Adam – were all recorded with the county recorder's office.

6   (PCO ¶5(h), (i), (m)-(o).)

7           The fifth factor – the retention of possession by the transferor – and the sixth factor

8   – whether the transferor maintained continued enjoyment of the benefits of the transferred

9   property – weigh heavily in favor of a finding that Plaintiffs are nominees of Dino and

10  Trina Adam.  Although they have not had legal title since 1994, Dino and Trina Adam

11  have continuously lived in the Property.  (PCO ¶ 5(c).)  Plaintiffs contend they have

12  accepted rent from their parents, yet neither has ever reported any rental income from on

13  their federal income tax returns.  (PCO ¶5(q).) The continued possession of the Property

14  by Dino and Trina Adam strongly supports the conclusion that Plaintiffs are nominees.

15  *See Leeds LP*, 2011 WL 3475282, at *20.  Additionally, while the IRS has not alleged

16  fraudulent transfer, Dino and Trina Adam have retained the benefit of transferring their

17  property to their children in a manner that would insulate them from IRS collection

18  efforts.  This constitutes a tangible benefit retained by Dino and Trina Adam.  *See Leeds*

19  *LP*, 2011 WL 3475282, at *21.

20          Five of six of the abovementioned factors weigh in favor of a finding that Plaintiffs

21  are nominees of Dino and Trina Adam.  Hence, the Court concludes that Plaintiffs are

22  nominees of Dino and Trina Adam, and only possess bare legal title to the Property.

23      **C.    FEDERAL STANDING - LUKE ADAM AND CHANDRA MARIE ADAM'S**

24              **STANDING AS HOLDERS OF BARE LEGAL TITLE**

25          The Court must determine whether, as holders of bare legal title to the Property,

26  Plaintiffs have standing to challenge the procedural validity of the IRS's tax liens.  The

27  Constitution limits the power of Federal Courts to actual "Cases" or "Controversies."

28  U.S. Const. art. III, § 2.  The doctrine of standing serves to set "apart the 'Cases' and

'Controversies' that are of the justiciable sort referred to in Article III" and thereby,

8

identifies "those disputes which are appropriately resolved through the judicial process[.]" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To maintain standing, a plaintiff must demonstrate three "irreducible constitutional minimum[s.]" *Id.* First, a plaintiff must present an "'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not conjectural or hypothetical.'" *Id.* (citations omitted). Second, there must be a causal connection between the alleged injury and the defendant's conduct. *Id.* Such an injury must be "fairly traceable" to the defendant's challenged action and "not the result of the independent action of some third party not before the court." *Id.* Third, it must be likely –not merely speculative – that the injury will be "redressed by a favorable decision." *Id.* In addition to the case-or-controversy requirement, which is "the core component of standing," prudential limitations on standing may exist because "the judiciary seeks to avoid deciding questions of broad social import where no individual rights would be vindicated and to limit access to the federal courts to those litigants best suited to assert a particular claim." *Phillips Petroleum Co. v. Shutt*, 472 U.S. 797, 804 (1985) (quoting *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99-100 (1979)). One such prudential limitation is that "a party normally cannot raise claims that belong to a third party." *Hilton v. Hallmark Cards*, 599 F.3d 894, 904 n.6 (9th Cir. 2010).

Here, Plaintiffs fail to establish the first element – injury in fact. The Ninth Circuit has held that, in certain circumstances, "possession of mere legal title by one who does not exercise dominion and control over the property is insufficient to . . . establish standing . . . ." *United States v. One Parcel of Land, Known as Lot 111-B, Tax Map Key 4-4-03-71(4)*, 902 F.2d 1443, 1444 (9th Cir. 1990). Moreover, Plaintiffs hold title to the Property as the nominees of Dino and Trina Adam. Prudential standing limitations prevent Plaintiffs from asserting their parents' rights. Thus, the Court holds that Plaintiffs lack standing to challenge the IRS tax liens.

### III.   CONCLUSION

In light of the foregoing, the Court concludes that Plaintiffs hold only bare legal title to the Property as nominees of Dino and Trina Adam, and therefore, Plaintiffs lack

standing to challenge the procedural validity of the IRS's tax liens.   Accordingly, Plaintiffs' First Amended Complaint is hereby **DISMISSED** with prejudice.

   **IT IS SO ORDERED.**

   December 28, 2011

   _____

   HON. OTIS D. WRIGHT, II
   UNITED STATES DISTRICT JUDGE